IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| ERIK MITCHELL VAN TASSEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 119-108 |
| | ) | |
| ANDREW SAUL, Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff appeals the decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision be **REVERSED** and the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

**I.   BACKGROUND**

Plaintiff applied for DIB and SSI on September 8, 2015, alleging a disability onset date of June 30, 2015. Tr. ("R."), pp. 255-58, 259-67. Plaintiff satisfied the insured status requirements through June 30, 2017. R. 17, 286. Plaintiff was forty-four years old on his alleged disability onset date, and forty-seven years old at the time the Administrative Law Judge

("ALJ") issued the decision under consideration. R. 286. Plaintiff alleged disability based on the following conditions: herniated discs, displaced knee with torn tendons, nerve damage in his feet, and high blood pressure. R. 290. Plaintiff completed the eighth grade, and prior to his alleged disability date had accrued a work history as a dishwasher, a restaurant manager, a meat slicer, and a technician at an RV dealership. R. 291.

The Social Security Administration denied Plaintiff's applications initially and on reconsideration. R. 142-45, 146-49. Plaintiff requested a hearing before an ALJ, R. 156-57, and the ALJ held a hearing on May 17, 2018. R. 31-83. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and Robert E. Brabham, Jr., a Vocational Expert ("VE"). Id. On July 20, 2017, the ALJ issued an unfavorable decision. R. 12-30.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since June 30, 2015, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

2. The claimant has the following severe impairments: lumbar degenerative disc disease, degenerative joint disease of the knees bilaterally, obesity, generalized anxiety disorder, and depression (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) [1] and is further

---

[1] "Light work" is defined as:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very

     limited to the following: occasional climbing ramps and stairs, but no climbing ladders, ropes, or scaffolds; occasional balancing, stooping, and crouching, but no kneeling or crawling; no exposure to unprotected heights. He is able to follow simple instructions, perform routine tasks, adapt to routine changes in work setting and duties, and make simple decisions. He is limited to occasional interaction with the public and supervisors, but frequent interaction with coworkers. He will be off task seven percent of the workday. The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from June 30, 2015, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

R. 17-24.

When the Appeals Council denied Plaintiff's request for review of the ALJ's decision, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues the Commissioner's decision is not supported by substantial evidence because the ALJ failed to: (1) properly weigh the opinions of Plaintiff's treating physician, Dr. John Whittaker, consider portions of Dr. Fred Fridman's opinion, and discuss the entirety of Deborah R. Matthews' opinion; (2) consider Plaintiff's symptoms of peripheral neuropathy, and instead improperly dismissing the condition at step two as a non-medically determinable

---

little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) & 416.967(b).

3

impairment; and (3) properly explain Plaintiff's RFC. See doc. no. 11 ("Pl.'s Br."). The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. See doc. no. 12 ("Comm'r's Br."). The Court reverses and remands based on the ALJ's summary dismissal of Plaintiff's neuropathy condition.

## II.   STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r

of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004).  Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence.  McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

To understand the Court's concern with the ALJ's findings related to Plaintiff's allegation of peripheral neuropathy, one must understand Plaintiff's history of treatment for this condition and the specific reasons stated by the ALJ for rejecting this condition at step two.

#### A. Medical History Regarding Peripheral Neuropathy

Dr. Whittaker is a Maryland physician who treated Plaintiff from approximately May 2015 through March 2016.  R. 395-403, 478-92, 517-19.  During that first visit in May 2015, Plaintiff complained of burning and tingling sensations in both of his feet, and Dr. Whittaker diagnosed Plaintiff with peripheral neuropathy of unknown etiology.  R. 399-401.  During the October 24, 2015 appointment, Dr. Whittaker found abnormalities during a sensory examination of Plaintiff's feet, noting "[d]ecreased to 10-gram monofliment [sic] at both feet."  R. 450.  Dr. Whittaker prescribed 300 milligrams of Neurontin for peripheral neuropathy and referred

5

Plaintiff to a neurologist to "perform an EMG/NCS to help determine whether neuropathy from [sic] back or peripheral neuropathy." R. 445. On February 26, 2016, Dr. Whittaker again affirmed the diagnosis of peripheral neuropathy, continued Plaintiff on 300 milligrams of Neurontin, and again referred Plaintiff to a neurologist for the same test to be conducted. R. 480. On this visit, Dr. Whittaker again found abnormalities during a sensory examination of Plaintiff's feet, noting "[d]ecreased to 10-gram monofliment [sic] at both feet." R. 485. On March 21, 2016, Dr. Whittaker completed a physical function capacity assessment, diagnosing Plaintiff with peripheral neuropathy and a back condition and noting extensive related physical limitations. R. 517-19.

After a hiatus from medical care that Plaintiff attributes to his move from Maryland to Georgia and his limited financial resources, the medical records pick up with additional medical findings related to peripheral neuropathy when Plaintiff found Christ Community Health, an indigent care facility in Augusta, Georgia. See R. 51. During an appointment on October 19, 2017, Plaintiff complained of neuropathy but the treating physician, Dr. Richard Perry, found normal sensation during the neurologic examination and did not diagnose Plaintiff with peripheral neuropathy. R. 527-28. During an appointment on January 24, 2018, Plaintiff complained of tingling and cramping in his feet, and PA Angela Watkins referred Plaintiff "to PCP regarding decreased sensation in bilateral LE and idiopathic peripheral neuropathy." R. 538-39.

Throughout the medical records from both medical providers, Plaintiff is constantly complaining of severe back pain and many efforts are made to identify and treat his back condition. Plaintiff continuously complained of symptoms of neuropathy, including burning, tingling, numbness, and tightness in the bilateral feet for many years. R. 55, 386, 400, 449, 483,

6

488-489. Indeed, during the hearing, Plaintiff testified he has been dealing with neuropathy in his feet for about fifteen years and the pain in his feet is constant. R. 50, 55. Plaintiff testified the skin on the bottom of his feet feel like it is too tight, and he described the pain as needle points in his toes which are sensitive to touch. R. 55.

### B. The ALJ's Rejection of Peripheral Neuropathy

The ALJ's discussion of this condition at step two is as follows:

> The undersigned finds the claimant's peripheral neuropathy a non-medically determinable impairment. A medically determinable impairment may not be established solely based on a claimant's allegations regarding the symptoms (20 CFR 404.1529 and 416.929, and SSR 96-4p and 16-3p). There must be evidence from an "acceptable medical source" in order to establish the existence of a medically determinable impairment (20 CFR 404.1513(a) and 416.913(a)) that can reasonably be expected to produce the symptoms. In this case, there is no objective medical evidence or diagnostic testing to support this impairment. The undersigned notes that although the claimant was diagnosed with peripheral neuropathy, there is no indication in the record that he received an EMG/NCS to support the diagnosis (Exhibit 5F3).

R. 18.

### C. The Reasons Why Reversal and Remand is Necessary

The sole basis for the ALJ's rejection of treating physician Dr. Whittaker's diagnosis is Plaintiff's failure to obtain an EMG/NCS, as Dr. Whittaker ordered. The ALJ erred for five reasons. First, the ALJ misconstrues the purpose of the EMG/NCS. Dr. Whittaker diagnosed Plaintiff with neuropathy based on his neurologic examinations, which included monofilament testing on two occasions that confirmed abnormal sensation in both feet. R. 484-85, 490-91. Dr. Whittaker referred Plaintiff to a neurologist to perform EMG/NCS for the purpose, as he explained, "to help determine whether neuropathy from [sic] back or peripheral neuropathy." R. 445. The only reasonable conclusion from close examination of the medical records is that Dr. Whittaker unequivocally diagnosed Plaintiff as suffering from neuropathy and ordered the

7

EMG/NCS to determine the source of the neuropathy, not to determine whether the neuropathy existed.

Second, an ALJ cannot dismiss out of hand a treating physician's diagnosis and opinion of physical limitations, based on the mere fact follow-up testing was never conducted by a specialist. In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Phillips, 357 F.3d at 1241 (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding daily activities). Dr. Whittaker's diagnosis of neuropathy is supported by his neurologic examinations of Plaintiff, which on two occasions included monofilament testing that detected decreased sensation in both of Plaintiff's feet. R. 484-85, 490-91. It is error to dismiss his unequivocal diagnosis based merely on Plaintiff's failure to follow up with a specialist for additional testing.

Third, an ALJ cannot dismiss out of hand a claimant's testimony concerning the physical manifestations of a diagnosed condition. When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995). Under the applicable regulations, the ALJ must

consider "all evidence, including subjective statements about the intensity, persistence, and functionally limiting effects of pain [as well as] the objective medical evidence, laboratory findings and statements from treating or nontreating sources about how the symptoms affect the claimant in deciding the issue of disability." Jarrell v. Comm'r of Soc. Sec., 433 F. App'x 812, 814 (11th Cir. 2011) (*per curiam*) (citing 20 C.F.R. § 404.1529(c)(4)). The ALJ failed to conduct this analysis.

Fourth, Plaintiff testified unequivocally at the hearing that he could not afford medical care and did not seek medical treatment after his move to Georgia until he found an indigent care clinic. R. 51. The ALJ never considered whether Plaintiff's poor financial condition may have been the cause of him never following up with a neurologist to undergo an EMG/NCS. "[T]he ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanation that might explain the failure to seek or pursue treatment," and the ALJ "must consider evidence showing that the claimant is unable to afford medical care before denying" benefits based on non-compliance with such care. Beegle v. Soc. Sec. Admin., Comm'r, 482 F. App'x 483, 487 (11th Cir. 2012).

Fifth, the severity test at step two of the sequential process is designed to screen out only groundless claims. Tuggerson-Brown v. Comm'r of Soc. Sec., 572 F. App'x 949, 950 (11th Cir. 2014) (*per curiam*). The severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working." Stratton v. Bowen, 827 F.2d 1447, 1452 & n.9 (11th Cir. 1987) (citation omitted). In fact, the Eleventh Circuit describes step two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (citing Brady v. Heckler, 724 F.2d 914

9

(11th Cir. 1984)).  Under this test, "an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Id.

The Commissioner is correct there is no need for an ALJ to identify every severe impairment at step two, and an omission at step two can be cured so long as "at step three, the ALJ…demonstrate[s] that it has considered all of the claimant's impairments, whether severe or not, in combination." Heatly v. Comm'r of Soc. Sec., 382 Fed. Appx. 823, 825 (11th Cir.2010); Comm'r's Br. 5-6.  However, the ALJ did not find Plaintiff's neuropathy a non-severe impairment that she then considered at step three.  Instead, notwithstanding Plaintiff's diagnosis and supporting objective evidence, the ALJ dismissed entirely any notion that Plaintiff suffered from neuropathy and never mentioned the condition at step three.[2]

The Commissioner argues why the ALJ might have found the medical evidence did not

---

[2]See Newton v. Astrue, No. 1:06-CV-1542-AJB, 2008 WL 915923, at *9 (N.D. Ga. Apr. 1, 2008) (holding failure to discuss non-severe impairment was reversible error); Smith v. Colvin, No. 1:15-23010-CIV, 2016 WL 5369305, at *5 (S.D. Fla. Sept. 26, 2016) (holding failure to address medical report and treating physicians' opinions regarding non-severe impairment was reversible error); Wilson-Gantt v. Comm'r of Soc. Sec., No. 6:15-CV-257-ORL-GJK, 2016 WL 4702420, at *7 (M.D. Fla. Sept. 8, 2016) ("After erroneously determining that Claimant's mental impairments were non-severe at step-two, the ALJ's never mentions them again. Thus, it is apparent from the face of the ALJ's decision that the ALJ's error at step-two is not harmless."); Cf. Burgin v. Comm'r of Soc. Sec., 420 F. App'x 901, 903 (11th Cir. 2011) ("Even assuming the ALJ erred when he concluded [plaintiff's] sleep apnea, obesity, and edema were not severe impairments, that error was harmless because the ALJ considered all of his impairments in combination at later steps in the evaluation process."); McCarthy v. Comm'r of Soc. Sec., No. 6:09-CV-754-ORL, 2010 WL 2836635, at *11 (M.D. Fla. June 14, 2010), *adopted by*, McCarthy v. Comm'r of Soc. Sec., No. 6:09-CV-754-ORL-28, 2010 WL 2836748 (M.D. Fla. July 19, 2010) (finding reversible error where ALJ did not acknowledge functional limitations from neuropathy in determining plaintiff's RFC); Ashford v. Barnhart, 347 F. Supp. 2d 1189, 1194 (M.D. Ala. 2004) (holding failure to explain how and why weight of evidence would not support a finding bipolar disorder was severe impairment, especially in light of medical record, constituted reversible error).

establish Plaintiff's neuropathy as a severe impairment, noting, "Plaintiff's objective neurological examinations consistently revealed normal findings including normal motor function, normal coordination, normal to only slightly reduced sensation, and normal motor strength." Comm'r's Br. 6-7. The first problem with this argument, however, is that Dr. Whittaker repeatedly diagnosed neuropathy despite such objective findings. Perhaps more importantly, the Court's "limited review [of the record] precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*) (citing Bloodsworth, 703 F.2d at 1239). This argument was not made by the ALJ at step two, and the Court declines this invitation to conduct a *de novo* review of the evidence of Plaintiff's peripheral neuropathy, as such determination is for the ALJ, not this Court, to make in the first instance. See Martin v. Heckler, 748 F.2d 1027, 1031 (5th Cir. 1984) (noting it to be "inappropriate on judicial review for the first time to apply administrative criteria not themselves considered by the [Commissioner]"). In sum, because the ALJ's evaluation of Plaintiff's alleged peripheral neuropathy impairments is not supported by substantial evidence, a remand is warranted.

The Court offers no opinion on what a complete and accurate review of the administrative record might conclude on Plaintiff's disability application, but the Court cannot conclude that the decision as reported by the ALJ is supported by substantial evidence. As such, remand is warranted. The Court need not reach Plaintiff's remaining contentions. Cf. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert testimony alone warrants reversal,' we do not consider the appellant's other claims.") Of course, should the District Judge accept this recommendation, on remand,

Plaintiff's claims must be evaluated in accordance with the sequential evaluation process and in compliance with the applicable regulations and case law in all respects.

## IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision be **REVERSED** and the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 2nd day of July, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA